The first case today is number 172076, Galileo Mondol v. the City of Somerville et al. Good morning, and may it please the Court, my name is Selina Fitanidis. I am here on behalf of the Plaintiff Appellants, Galileo Mondol and his parents, who would like to reserve two minutes for rebuttal, please. Thank you. We are seeking reversal of the District Court's erroneous decision granting summary judgment for the defendants on Plaintiff's 14th Amendment and state law claims. Like the Lamoni v. United States framing case that was before this Court about a decade ago, this case is like a jigsaw puzzle containing hundreds of pieces of evidence that, when put together and looked at as a whole, create a picture of the Somerville officials' wrongdoing, their motive and intent in undertaking that wrongdoing, and the terrible effects that that wrongdoing had on many young people, but especially on my client, Galileo. If a Court refuses to look at the entire jigsaw puzzle as a whole, and in its written opinion pulls out two-thirds of the puzzle pieces, then naturally the puzzle appears to be incomplete. That is what the District Court did in its summary judgment decision. Plaintiffs do not have the burden at the summary judgment stage of proving exactly what was going through the defendants' minds when they tampered with adolescent witnesses and filed false reports with the police about my client. Dr. Warren, you do need to show a reasonable basis for the fact finder to conclude that the defendants were engaged in the conspiracy that you write. Correct. And you don't have, as I understand, you don't have any direct evidence of that, so you're relying on this jigsaw puzzle that would generate inferences. Well, there is rarely direct evidence of a conspiracy. And here it is not one of the rare cases. Exactly. The case is based on circumstantial evidence, largely. When we're trying to infer what's in someone's mind and why they did something, one of the things we look at is motive and self-interest. And as I understand the premise in your arguments is that the defendants had a motive to try to cover up or insulate themselves. And that's where I have a little difficulty understanding this because it seems to me it would follow from that motive that they would want to minimize the number of students who were involved in wrongdoing rather than increase the number. And yet your premise is that they decided in order to make it look like there's not a bigger problem, they expanded the scope of the students who they were claiming was involved, and I have trouble following that. Okay, I'd be happy to address that. A crucial piece of the jigsaw puzzle that the district court ignored had to do with the defendants, from our perspective, very well-documented conspiracy to cover up their own wrongdoing in running the camp, and their understanding, and this is crucial, their understanding that Galileo was unlikely to cooperate in that cover-up. That can't be said of many of the other eyewitnesses. The court wondered why these public officials, as your Honor has raised, why these nice public officials would want to frame an innocent boy for these terrible crimes. And in your explanation, can you explain how your suggestion is that they're targeting only your client because the motive has to do with what the mother's behavior was as well as covering up. I'm not seeing how there's a direct targeting at your particular client when there was supposedly one primary assailant, yet three boys were implicated. Yes, what we believed happened was that when the defendants were aware that there was widespread misconduct occurring at this camp, and that when one incident was disclosed and they knew it was going to go to a police investigation because a mandated reporter was the one who knew about it, they freaked out. And they started thinking, how can we cover this up? How can we minimize the damage that we're facing here? What they came up with was to throw the three upperclassmen that had been in the cabin under the bus and emphasize to the juvenile witnesses, the adolescent witnesses, just, those kids aren't like us, aren't like you. They're bad kids. We know you weren't doing any of these things. Don't talk about anything else that went on at this camp. Which, by the way, what was going on at this camp would have been exculpatory evidence for all three of the accused boys. Don't talk about what was actually going on at this camp. Just throw them under the bus. They're different from us. They're the bad guys. The problem is that when they started implementing that plan, there was absolutely no evidence against Galileo and, for that matter, against Roberto either. Isn't it logical, though, to start with the people in the tent? Oh, it's perfectly reasonable to start questioning those people. They should have been interviewed. Certainly they should have been interviewed. We're not saying there was anything wrong with inquiring whether Galileo was involved. There were at least ten people in that room when this assault occurred. Everyone should have been questioned. Everyone was potentially involved. So that's not what we're complaining about. What we're complaining about is the deck stacking, the witness tampering, the false reports, before anyone had specifically implicated Galileo in any misconduct. When you say witness tampering, I mean, I looked through the record to a degree, but, again, I don't find any instance where they don't testify that the defendants told them to tell a lie. And that's not required, Your Honor, especially with juvenile witnesses. Juvenile witnesses often don't know that they have been subjected to questioning tactics that were overly aggressive and suggested things to them that they didn't actually remember. In some of the witnesses' cases, that's undoubtedly what happened. They honestly had their memories changed. In other cases, because of the peculiar circumstances of these kids, they were undoubtedly pressured to falsely accuse Galileo, and they knew they were doing so. So the facts behind it, well, this is very elaborate and sophisticated. It sounds like a KGB-type conspiracy you're talking about here. When they got together, they said, we've got to isolate this one person because we think he might not be cooperative. So how are we going to do it? Oh, we don't want to tamper directly, but we'll use psychological techniques that will plant ideas in the witnesses, and that's the tampering? That's what you seem to be saying. It doesn't seem far-fetched to me. They met for hours and hours together. It may not be far-fetched, but it certainly is speculative. And your duty is to make out the case of someone in judgment by showing that there is a reasonable set of inferences that a fact finder could draw. And I think we're all struggling with the notion of what makes the set of inferences that you would like us to draw reasonable as opposed to speculative. I'll tell you why we feel that there is very strong evidence of wrongdoing in this case. What could possibly be an innocent explanation for conducting five separate meetings with the eyewitnesses to discuss the incident right after the police had specifically told the defendants on multiple occasions not to talk to the witnesses? If the defendants weren't deliberately creating an atmosphere of accusation against Galileo, why did defendants Kernitoni and Scarpelli repeatedly tell the eyewitnesses before anyone had implicated Galileo in any misconduct that Galileo had participated in raping a freshman and that the three upperclassmen would all pay for what they had done? Don't you see how prejudicial that is to him? And Kernitoni is not an ordinary mayor. He's a former criminal defense attorney. If he wasn't trying to instigate criminal proceedings against Galileo when he granted him a perpetrator before any of the eyewitnesses had implicated him, what on earth was he intending to do? Thank you. Thank you. Good morning. May it please the court, my name is Leonard Keston. I represent the city of Somerville, Mayor Joe Kernitoni and the other defendants. My clients have been under an attack since this case started. There was no basis, none, to suggest that they did anything here. It is uncontroverted. Three upperclassmen went into the freshman cabin when the rest of the team was at a scrimmage and a broomstick was inserted into the rectum of one of the freshmen. The so-called conspiratorial meetings, everything that happened here is wholly rational and the inferences, the only reason they acted totally correctly. This was reported to the police within an hour of them learning it, to the police. Of course they met. They had to deal with the trauma of this event and the subsequent investigation was going to inflict on the children and the parents of the students at Somerville High School. They did not meet with anybody individually. Without the pallet of the plaintiff's attorneys claiming that all this is bad, if you look at it, it looks perfectly appropriate. The charging decisions were made by District Attorney Capus and a leading ADAF. I apologize to her in advance for forgetting her name momentarily. The investigation was conducted by the Berkshire DA. They sent a team of investigators down and as soon as possible talked to the witnesses. If you want witness manipulation, if you want to read the depositions of what Ms. Fatalities was doing to these kids, if you want witness manipulation, I point you to one witness, a victim, one of the victims who was not raped, but he was assaulted. They said, well none of the victims implicated Galileo in assaulting them, but each of them implicated Galileo in assaulting another victim. So this young man is being proposed by her and on page 547 of the appendix, he tells her, because she's not going to ask him what Galileo did, he tells her, I saw Galileo putting the broomstick into the rectum of ML. AD tells her that. She knows he says that because he said it to the police, he said it at the grand jury. He's always said it. She knows that. He tells her that. Four pages later, she's acting about something completely different. And suddenly she says, she's a different topic, and she says, Galileo never had the broomstick in his hand while he was in the freshman academy, right? He goes, yes. Galileo never assaulted ML with a broomstick. Yes. Galileo didn't assault anyone. I say, I think you're trying to, I think you're tricking him. He's saying, yes, it's a negative. These are trick questions. She can correct the record later. He says, this young child says, can you repeat to her? Isn't it true that Galileo didn't assault anyone in the freshman academy as far as you say? I say, answer, no, he did. He didn't? No, he did. That's what went on. I think you're focusing on how to phrase questions in a deposition. Would you come back to the issue here? Yes, sir. How do you respond to the last allegation that was made in Mr. Kennedy's death? Yes, sir. One of your clients point blank stated that the plaintiff had participated in rape. He didn't. It's that simple. If you look at the record, he didn't. This so-called jigsaw puzzle. I mean, the statement of facts. We could go on for weeks dissecting their statement of facts. I mean, they say something is a fact based on a triple hearsay statement by someone. He didn't say he participated in a rape. What they did is, initially when this was first reported, the coaches met with the kids to find out if there was any basis. It wasn't a meeting. They asked the kids there was. They immediately reported. They reported to DCF. They decided what they need to do is the kids have a practice the next morning. Not a meeting. They're going to provide support services. It's lots of people there. Where they meet, where they have counselors saying, look, kids, all this stuff is happening. During that meeting, victim number two starts crying and tells the coaches they tried to do it to me. That's AD. And the third victim, GS, says, yeah, they also tried to do it to me. So there was no meeting. Conspiratorial meeting. Then they decided that they need to let the parents know what's about to happen. So they set up the library so-called meeting. And at that meeting, nothing happens. Nobody tells them that anybody did. They said there's three kids. Undoubtedly, they knew there were three upperclassmen went in and something bad happened. The police then interviewed the witnesses separately. And seven of them implicate Galileo in either active or encouragement stuff. Some don't. The stories are all different. That's why the KGB is falling apart, because the stories are all different. Some kids say nothing happened. Kids who weren't at these meetings say he did something. It's what you would exactly expect if you interviewed a bunch of people about what happened yesterday. Mr. Hickman, could you just clarify, are you responding to Counselor's last point about the five times the folks spoke to them? Yes, the so-called five meetings. Okay. So I just want to clarify the record. There were no such meetings. There was no meeting with witnesses one-on-one. But were these gatherings or counseling sessions, were they taking place at a time when they had been instructed not to speak with anyone? No. Okay. This instruction not to speak to anyone, they were told don't do an investigation. They didn't. They knew they shouldn't do an investigation. So the so-called conspiratorial meetings were this, at the park with the whole team there, across the park, with the whole team there, they brought in counselors and people and said, look, this is about to happen. You know, we have counselors you can talk to if you're traumatized. It was not a meeting to say tell us what happened. The library meeting was for the parents, for the families to tell them this is what's going on. The police will be there and the police will be interviewing the kids and this is happening. None of it was sitting down with the witnesses. I mean, other than them saying it's all nefarious, it's all what you would expect responsible people to do. Mr. Keston, there's a defamation count here. Yes, sir. And the allegation, one of the allegations, the plaintiff, is that the mayor, Kermit Tony, falsely accused Galileo of having committed rape. What's your response to that? He did not. The mayor's statement... Did they quote his statement? Well, if you read the statement... I have, yeah. You will see that he is talking about the charges. These kids have been charged with rape. That was true. His statement was after Friday. The mayor found out about the charges from a phone call from D.A. Capos, who told him this is what we've decided to do. We're going to charge them. So after the arrest, there was a press conference where the mayor referred to what had just happened. The mayor did not say, in this business of targeting Galileo, there was actually less evidence against Roberta. But the D.A. made these decisions, the charging decisions. These witnesses testified at the grand jury. The D.A. also made the decision not to go forward with the prosecution, but in searching the record, I couldn't find any reason for it. Because we don't know. We don't know. It's just prosecutorial discretion. We don't know. I mean, they have implications. We've opposed the D.A., but they made a decision. They got two guilty pleas. We don't know. You can speculate. There's also the issue of putting the victims through stuff. But, you know, if you look at these cases, there was the most evidence against Gual, Galileo, less so, Roberto, less. The third one pled guilty. So I suggest there can be no inference from the fact that they dropped it. But they made all these decisions. They testified. D.A. Cagless testified at the deposition. A.D.A. Aramo, Rachel Aramo, she testified. The state police testified. They all talked to the witnesses. They all said there's no evidence of any tampering of any sort. They all determined there was probable cause to charge them what they charged them. Somerville had nothing to do with it. Somerville, the mayor, did call this hazing. In their first public statements about this, they said there was a hazing incident. And then when the D.A. and the prosecution, the state police, attached to the D.A. unit, established, they decided that this was going to be charged as a rape. That's the first time that word came out. So the concept that the mayor was accusing anyone, the mayor was talking about what had just happened, which is these three young men were arrested and charged with rape. So there was no, he never said anything that's close to being false. Everything he said is true. All of it was true. They always said it was allegations. They were arrests. Nobody drew any conclusions. And the concept that Gali and Amanda were somehow targeted comes only from the table on my left. There is no evidence of it whatsoever in this, that these people had some evil motive. And when you look at the facts, I understand. The facts have to be taken in the best way I can find. But the facts you established, clearly established, there is no case here. Thank you. Thank you. Mr. Keston made a number of representations about the facts that are not supported by the record. The police specifically told the defendants after they heard that they had been already talking to witnesses, not complaining about the first conversation they had with the witnesses because they didn't know any better, told them, okay, you did that, stop talking to the witnesses. They deliberately scheduled five meetings. Some of those meetings were with witnesses, individual eyewitnesses alone, alone with the child witnesses and their parents. And in those meetings, they imputed guilt to my client at a time when nobody had said he had done anything wrong. As for the assumption that he should have been assumed guilty of annually raping a boy with a broomstick because he happened to be in a room with nine other people at a camp where there was no supervision, the upperclassmen were not only allowed, they were encouraged to go into the different cabins. That was part of the team bonding experience. That was part of what made this camp so risky, to have children of all different ages, ranging from a middle school student to a 19-year-old man, in cabins unsupervised for an entire weekend with no activities much of the time. That's how this malarkey started happening. It was dangerous. The defendants knew it was dangerous and they were tolerating it, and not surprising, a terrible thing happened. My client was new to this school. He wasn't part of this culture. He was shocked by what he had seen, but he had seen it all weekend when he saw this incident with the freshmen. He reported it to the captains who were his friends. He said, should we do something about this? They didn't do anything about it because it was normal at this camp. The defendants knew it was normal. The kids knew it was normal. That's why nobody did anything about this until a mother happened to hear about it from a younger kid. But the allegation that they didn't meet with witnesses, all they did in those 24 hours was meet with witnesses and tell those kids that my client was guilty when no one had implicated him, and at a summary judgment stage, what should be sufficient is the expert's opinion in this case. That the import of those statements was to influence those kids to falsely or mistakenly accuse Galileo and suppress reports of what else had been going on at that camp. Thank you.